Donnie R. NIECE *v.* DIRECTOR, Employment Security
Department, and Dillard Department Stores

E 98-72                                              992 S.W.2d 169

Court of Appeals of Arkansas
Division II
Opinion delivered June 16, 1999

*Kaplan, Brewer & Maxey, P.A.*, by: *Silas H. Brewer, Jr.*, for appellant.

*Allan Pruitt*, for appellees.

JUDITH ROGERS, Judge. This is an appeal from the Board of Review's decision finding that appellant intentionally violated the employer's drug policy and that such action was misconduct for the purposes of unemployment law. On appeal, appellant argues that there is no substantial evidence to support the Board's decision and that the employer failed to promptly provide medical treatment in accordance with the Arkansas Workers' Compensation Act. We agree with appellant's first point and reverse and remand for an award of benefits.

The record reveals that appellant was employed by Dillard's Department Stores in the shipping department. Appellant had worked there for a year and four months. Appellant's job entailed loading trucks and operating a sorter machine. On October 29, 1997, an hour before the end of his shift, appellant's toe got caught in a section of rollers on a conveyor line. Appellant reported to the assistant manager that he had injured his foot. The manager asked if he was all right, and appellant responded that he was okay, and he finished his shift. While at home that same eve-

ning, appellant's toe began swelling and hurting. Appellant's mother gave him a Tylenol 3 tablet. The Tylenol 3 was his mother's prescription medication. Appellant was unaware that the Tylenol 3 contained codeine. Appellant arrived at work early the next morning and informed the shipping manager that his toe was hurting worse and that he needed to see a doctor. Appellant did not perform any work activity that morning, but he was taken to the doctor. While at the doctor's office, appellant was drug tested. The drug test returned positive for codeine. Appellant was subsequently fired for violating the drug policy.

On appeal, appellant contends that his conduct was not an intentional disregard of the employer's interest and that the alleged rule violation relied on by the Board was different from the alleged rule violation for which he was terminated by Dillard. Appellees argue that appellant was aware of the company policy prohibiting employees from unauthorized use of prescription drugs, nonetheless, appellant took his mother's prescription medication intentionally disregarding the policy.

Our standard of review in employment security cases is well-settled. This court reviews the findings of fact of the Board of Review in the light most favorable to the prevailing party, only reversing where the findings are not supported by substantial evidence. *Dray v. Director*, 55 Ark. App. 66, 930 S.W.2d 390 (1996). Substantial evidence is such evidence that a reasonable mind would find adequate to support a conclusion. *Id.* The credibility of the witnesses and the weight to be accorded their testimony are matters to be resolved by the Board of Review. *Anderson v. Director*, 59 Ark. App. 266, 957 S.W.2d 712 (1997). Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Perdrix-Wang v. Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993).

The Board relied on the case of *George's Inc. v. Director*, 50 Ark. App. 77, 900 S.W.2d 590 (1995) to hold that appellant

intentionally violated a company policy when he took an unauthorized prescription drug that he knew violated company policy. We find *George's* distinguishable from the facts of this case. In *George's*, we only determined that a drug policy was not unreasonable when it promoted safety in the workplace. We then remanded the case back for a determination of whether the claimant had intentionally or deliberately violated the drug policy. In this case, the issue does not involve the legality of the policy, but rather, did appellant intentionally violate the drug policy. Because that issue was never reached in *George's*, the Board's reliance on *George's* was misplaced.

█ In determining whether appellant intentionally violated the drug policy in this case we look to Arkansas Code Annotated section 11-10-514(a) (Repl. 1996). It provides that an individual shall be disqualified for benefits if he is discharged for misconduct in connection with the work. "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has the right to expect; and (4) disregard of the employee's duties and obligations to his employer. *Rucker v. Director*, 52 Ark. App. 126, 915 S.W.2d 315 (1996). There is an element of intent associated with a determination of misconduct. Mere good-faith errors in judgment or discretion and unsatisfactory conduct are not considered misconduct unless they are of such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of the employer's interest. *Id.* Whether an employee's acts are willful or merely the result of unsatisfactory conduct or unintentional failure of performance is a fact question for the Board to decide. *Id.*

Appellant testified that he was injured at work. He said that when he went home his toe began to hurt worse, and he asked his mother for pain medication. His mother tried to contact her doctor to see if appellant could take her Tylenol 3 prescription medication. However, the doctor could not be reached. Appellant testified that he did not know that Tylenol 3 contained codeine or

that it would show up on a drug test. He said that he only took the medication for his injury. The record indicates that appellant did not take the medication the next morning before he went to work to report that he needed to see a doctor. There is no evidence that appellant took the medication at any other time while working for Dillard's. In fact, the evidence shows that appellant never missed a day of work in a year and four months, that he was always on time, and that he was a good worker. Even Dillard's unemployment manager acknowledged that appellant was not a pharmacist and that he could not know what drugs were contained in a Tylenol 3.

Under some circumstances, people can make a decision that is not intentionally a disregard of the employer's interest but more a decision out of concern for their own health and well-being. This case is one of those circumstances that demonstrates a mere good-faith error in judgment that was not to such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of the employer's interest. Appellant's work history with Dillard was exemplary. At the time that appellant was injured, he was not under the influence of any drugs or alcohol. It was not until his injury created the need for appellant to take pain medication that his mother provided him with her prescription Tylenol 3. Despite the fact that appellant knew he was not to take someone's prescription medication, the facts in this case lead to the logical conclusion that appellant made a good-faith error in judgment. Thus, we cannot say that reasonable minds could have reached the same conclusion as the Board. Because we reverse and remand this case to the Board for an award of benefits, we need not address appellant's second point on appeal.

MEADS and BIRD, JJ., agree.